## King's Heirs *vs* Morris and Snell.

ERROR TO THE BOURBON CIRCUIT.

*Husband and wife.   Devises.   Trust and trustees.*

JUDGE MARSHALL delivered the. Opinion of the Court.

CHANCERY.

*Case* 46.

October 18.

The case stated.

THE will of James Hutchison contains, among others, the following clause: "I give and bequeath to my daughter, Louisa King, the tract of land lying on Townsend, that I purchased of. Morris and Langston, by her paying $1650 when she gets possession," &c. &c.   The sum thus required to be paid was but a small part of the value of the land devised, and it was understood by the executor that Mrs. King would take the land.   But before she had paid the money or was let into the possession, she intermarried with Morris, and the possession was given up to them without payment.   About a year afterwards Morris, who had received by the marriage and in right of his wife, during the coverture, seven slaves of the value of $1800, $750 in money, and personalty to the value of $128, paid to the executor the sum of $1650 charged to his wife in the devise; and in a few weeks after this payment Mrs. Morris died, having had no child by this last marriage, but leaving a daughter by her former marriage, who inherited the land, and leaving her husband entitled, as her administrator, to about $400, in addition to what had been already received from her father's estate.   A judgment in ejectment having been afterwards obtained on the demise of the heir of Mrs. Morris against Morris and his tenant Snell, this bill was filed, setting up a right in Morris to be reimbursed out of the land, the sum which he had paid, and claiming to retain the possession and to enjoin the judgment until reimbursment should be made out of the rents.

The injunction was granted and on final hearing the Circuit Court, regarding the payment by Morris as if made by a tenant for life, in discharge of an incumbrance on the estate, and apportioning the sum paid between the life estate and the inheritance, deducted from

Decree of the Circuit Court.

the $1650, the portion estimated as falling upon the life estate, and crediting the residue by the $400 to which Morris was entitled as administrator of his wife, set off the balance against an equal amount of the rent or annual value of the land which remained in his possession from the death of his wife to the rendition of the decree. To reverse this decree the heir of Mrs. Morris prosecutes a writ of error, alleging that Morris was not entitled to charge the land with the reimbursement of any part of the sum paid by him; and Morris has assigned cross errors complaining that he was not allowed to receive the whole sum out of the rents, without deduction either on account of his interest in the land as husband, or of the assets in his hands as administrator of his wife.

A devise to a *feme sole* of a tract of land, charged with the payment of a sum of money, she marries, the husband discharges the incumbrance, on the death of the wife without issue, the husband can claim no remuneration, either by a charge upon the land or otherwise, for the money so paid.

If Morris is entitled to reimbursement to any extent, it is difficult to avoid the conclusion that the decree is sufficiently favorable to him. If the $1650 be regarded as a personal debt of the wife *dum sola*, remaining unpaid till her death, her choses in action, uncollected at her death, would of course be liable for its payment. And if the husband could be regarded as becoming a creditor by paying the debt during the coverture, there would be no propriety in allowing him to charge the real estate in the hands of the heir with the entire amount, so long as he had any assets in his own hands as administrator. Nor would there be any justice in allowing this, although the debt be secured by lien on the real estate of the wife. And if the land were placed under lien for the payment of this debt, before or during the marriage, and the husband, by paying the debt during coverture, acquired the benefit of the lien to any extent, we do not perceive on what principle he could claim to stand on a better footing than an ordinary tenant for life, who, in discharging an incumbrance on the estate is considered as discharging, in part, a burthen upon his own interest, and as having, to that extent, no just claim to remuneration. But we are of opinion that he was not entitled to charge the land to any extent for his reimbursement.

It is certainly not the necessary effect of the devise, and as we think, it was not the intention of the testator that this sum of $1650 should be raised out of the land

itself, as the devisee was not, under the literal terms of the will, to have any use or profit of the land until the money should be paid. It was not intended that this sum should be raised out of the land at all events, and into whose hands soever it might come; but if the devisee had declined taking the land, the devise would have failed, both as to the land and the money, and the former would have lapsed into the estate to be divided among the heirs or subjected to the payment of debts, as the exigencies of the estate might require. The executor being the person entitled to receive the money, might doubtless, as he did, waive his right of requiring payment before or on the delivery of possession. And if it be conceded that, upon such delivery of possession without payment, a lien upon the land for the money, either arose or remained in force in behalf of the executor, it cannot be doubted that, by the election of the devisee to take the land on the terms offered by the will, and by the delivery of the possession without payment, a personal obligation to pay devolved upon the devisee alone, if she was then unmarried, or upon her husband and herself if the election were made after marriage, which obligation was, in either event, enforcible by personal remedy against the husband during the coverture.

The sum required to be paid by the devisee, is in effect, so much charged for the land; and is the price at which the testator proposes that she shall have it, vesting in her the legal title upon her paying, or pherhaps on her agreeing to pay the price. By electing to take under the devise, she elects to purchase the land at the proposed price. If this election were effectually made before the marriage, she purchased or agreed to purchase, as a *feme sole*, and as such owed the price. If the election was not effectually made before but during her marriage, then the husband and wife, or the husband alone agreed to purchase the land for the wife. In either case any lien which the executor may have had, was in the nature of the equity which the vendor has to subject the land sold and conveyed, to the payment of the purchase money; and the question is, whether, considering the debt for the land as having thus arisen either before or during the coverture,

A devise to a *feme sole* of a tract of land on the payment of a fixed sum in money, is in effect an offer of sale at that price, and on the *feme sole* devisee assenting to take, the sum stipulated becomes a personal debt, if not assented to until after coverture, and is then assented to, it becomes a purchase of the husband and wife or the husband alone, for the benefit of the wife.

a court of equity, under all the circumstances of the case, will regard this lien as being extinguished by the husband's voluntary payment, or will uphold it for his benefit, to be enforced for his reimbursement on the principle of subrogation, after the coverture is determined by the death of the wife? Was it the presumed intention of the parties, that the husband having become invested by the marriage with the property of his wife, exceeding in value the price of the land, should acquire such a claim upon the land, by appropriating a part of this property to the payment of the price? or does equity and justice require, that because by the early and unexpected death of the wife, the husband has been prevented from deriving, in his own person, and in that of the anticipated issue of the marriage, all the advantage from the purchase and payment, which he expected to derive, he should be permitted now to set up a claim to remuneration out of the land, which, at the time of paying the money, was unthought of and unknown?

Where husband marries a wife to whom her father had before marriage devised a tract of land, charged with the payment of a sum of money greatly less than its value, and husband receives by the wife, personal estate of her father, property & money exceeding the sum charged, pays the charge and takes the land, it will be presumed that it was an advancement to the wife and for the benefit of the inheritance, and on the death of the wife, husband has no lien on the land for remuneration, tho' the wife die without issue, and before husband is reimbursed of the profits of the land.

The executor states that he retained no lien upon giving up the possession of the land, and transferred none on receiving payment, meaning, as he explains himself, that nothing was said about any lien on either occasion—which statement is perhaps of no importance, except as corroborating the presumption otherwise arising, that as the devisee, before her marriage, had personal property in possession, and in the hands of the executor, more than sufficient to pay for the land, to all of which the husband became entitled by the marriage, the executor looked to that fund and not to the land for payment—and that the husband having that fund actually in hand, regarded the payment as virtually made out of it, and looked to the land for remuneration only in his anticipated enjoyment of it for a series of years, and in its descent, in part at least, to the issue of the marriage, or in its future sale by the concurrent act of himself and wife, to meet the exigencies of their affairs. And in all this there is, as we think, a sufficient motive and consideration for his making the payment and relieving the land from the incumbrance, if there were any, not with a view to becoming thereby a creditor of the land or of

his wife, but purely for the advancement of the wife and for the benefit of the inheritance; and in the absence of any and every circumstance, tending to create the presumption that he did in fact intend to continue the incumbrance on the land, or in any manner to become the creditor of his wife, we think the clear presumption, from all the circumstances is, that he did not so intend; and although, in the event that has occurred, the anticipated benefit from his payment has been defeated. This, however it may operate to give an aspect of hardship to the case, does not affect the right which he acquired by the payment; and his claim, now against the heir of his wife, stands precisely upon the same ground as the claim of his heir against the wife would stand, if, after having enjoyed the estate for forty years, he had died without issue of the marriage, leaving the wife surviving.

King's heirs
vs
Morris & Snell

If for a debt of the wife, or of her land, *dum sola*, husband and wife mortgage the wife's land, or if they mortgage her land for money borrowed during the coverture to pay off such a debt, and the husband at the same time execute a covenant for payment of the money, these circumstances show sufficiently that the husband does not intend to make the debt his own separate debt, but that he intends to keep it up as a debt of the *feme* and as a charge upon her land. In such a case a court of equity would properly regard the husband's covenant as collateral security, and himself as a mere surety; and if it had the opportunity would doubtless, in the first instance, enforce payment out of the land of the wife; or if payment should have been coerced at law against the husband on his covenant, he would be relieved by the subjection of the land to his reimbursement; and this is the strongest case to which we have been referred, or which we have found in the treatises or decisions relating to the reciprocal rights of husband and wife, upon payment of the wife's mortgage debt by the husband. But the analogy of this case to the one now before us, fails in the decisive fact that here there is no manifestation of an intention to keep up the debt as a charge against the wife or her land, but a sufficient motive for a contrary intention, and a sufficient presumption of its existence.

Husband and wife mortgage the land of the wife for money borrowed during coverture, to pay a debt of the wife *dum sola*, and husband at the same time execute his bond for payment of the mortgage money. It will remain a charge upon the land of the wife, and husband only a collateral surety. And in such case, if payment be coerced from the husband, he will be reimbursed out of the lands.

KING'S HEIRS *vs* MORRIS & SNELL

If tenant for life discharge an incumbrance upon the estate for the benefit of the inheritance, he will not be deemed a creditor of those in remainder.

The wife cannot be presumed to be a trustee for the husband.

Even in the case of a tenant for life, without interest in the inheritance, discharging an incumbrance upon the estate, if it sufficiently appear that he pays off the incumbrance for the benefit of the inheritance, he will not be deemed a creditor: 1 *Cruise's Digest* (*side page*) 120; 1 *Powell on Mortgages*, 316, *in notis*—and much less will the husband, under the circumstances of this case, be deemed a creditor when such intention appears.

But there is still another ground which we regard as decisive against the claim of Morris, which is, that the wife cannot be presumed to be a trustee for her husband, and if he purchase an estate in her name, it shall be presumed, in the first instance, to be an advancement and provision for her: 1 *Cruise's Digest*, (*side page*) 479; and so if she, while *sole*, purchase an estate in her own name, taking the title, and he pay the price after marriage, it must, on the same principle, be regarded as an advancement and provision for her. We are inclined to think, however, that there was in this case no effectual election before marriage, to take the land, which would have bound the wife *dum sola*, or could have been enforced against her, and that the election and purchase having been made after the marriage, was a purchase by the husband in the name of the wife, and therefore coming directly within the rule laid down by Cruise, must be deemed an advancement for her benefit, for which no charge arises against her or her estate; and even if she made an effectual election before marriage, and was indebted *dum sola*, for the price, it was the duty of the husband to pay it, and especially as he had her property, of greater value than the debt, and he should be presumed to have paid it as husband, and for her benefit, and no equity arises in his favor for remuneration.

On all these grounds, we think Morris had no equity to be reimbursed from the land, and that his bill should have been dismissed.

Wherefore, the decree is reversed on the writ of error of the heir, and the cause is remanded with directions to dismiss the bill.

*Owsley* for plaintiffs; *Morehead & Reed* for defendants.